Thank you Judge Owens, and may it please the Court, Patrick Fuster on behalf of Plaintiff Appellant Shane Love, I'd like to reserve three minutes for rebuttal please. Very well. The party's briefing has substantially narrowed the issues for decision. As it came to this Court, this case was about the preclusive effect, if any, of Judge Otero's dismissal of the first case for lack of Article III standing. Our opening brief explained why the District Court should have allowed Mr. Love to re-litigate his standing, including because the City waived its preclusion defense by removing the second case from State Court back to Federal Court, and also because issue preclusion does not apply to Article III standing at all. Then in its brief, the City abandoned the District Court's decision to apply issue preclusion, and attempted to re-characterize the dismissal as a merits ruling on an issue called 14th Amendment standing, but the record plainly refused the City's new theory. The City moved to dismiss for lack of Article III standing, and Judge Otero granted the City the Article III dismissal it sought, while expressly declining to address whether Mr. Love had stated a claim under Rule 12b-6. All that is more than enough to reject the City's new theory, and at most the City has shown that the dismissal was ambiguous, and it has long been the rule that issue preclusion does not apply to ambiguous rulings. Well, what I'm wondering, counsel, is why your client didn't appeal Judge Otero's decision, because it seems to me Judge Anderson was just following that. Right, Your Honor. I think that his choice not to appeal helps us, if you'll let me explain that, in two steps. So first, Mr. Love didn't have to take an appeal from the jurisdictional dismissal. A jurisdictional dismissal gives a litigant two choices. He could appeal to the Ninth Circuit and say, Judge Otero got it wrong. We should restart this case in federal court, or he also had the option to file in state court. He'd get his case back on track immediately, because Article III does not apply in state court. Fastest route to getting his case back on track. So the second aspect of it is that he did notice an appeal, and then chose not to prosecute it. I wasn't involved with the case at the time. I don't know exactly what he was thinking, but one possibility is, I don't need to exhaust my appeal, because Judge Otero's dismissal gave me this option. So the city's attempt to recharacterize a dismissal after the fact would create this preclusion trap, where a litigant gets an Article III dismissal. Some reason the dismissal looks as though it veers into the merits. The litigant doesn't know whether or not he has to take an appeal. So is there the same reason this court gave him a re-use against the Amish? What is the jurisdiction of this dismissal? We don't want parties to have to take a protective appeal just to preserve their ability to file in other court, because that doesn't conserve judicial resources. So counsel, let's assume for a second that the district court erred in casting this as Article III standing. And there's some language in the answering brief on pages 15 through 16 that seems to acknowledge that the district court got on the wrong track by casting it as standing as opposed to whether there's a claim to be had under 1983. Let's say you're right about that. The remedy, I'm trying to understand what you're seeking. So in your brief on pages 48 to 49, you make, I think, what the argument that you want us to do here. You say, all along he has had Article III standing to seek compensation for the deprivation of due process and the emotional distress of witnesses and the loved one killed by the police. The district court should consider the merit of the due process claim in the first instance after appropriate briefing on remand. Is this, in your view, is this case that simple, that simply they applied the wrong standard below, therefore issue preclusion cannot apply, and there's just basically a redo, essentially? Basically, if I could take that, you got it in two steps. So I see it as a wrong standing decision. And that then brings up our arguments for adversity. The argument that the city waived it, the argument that issue preclusion does not apply to Article III standing, and then potentially also the fact that the city seems to have abandoned the Article III reading, is also potentially an ambiguous rowing, because the label, the headline issue that Judge Arterra purported to decide was Article III standing. That's also the basis on which the city moved to dismiss. But the city combined its dismissal under Article III with merit c-types arguments. We point out not the exact right merits test, but merit c-type arguments. So it's an ambiguous decision, and that would mean no issue preclusion at all. So I think both of those routes are how we get back down on the merits. But if we were to simply say, and again, I'm not saying we're doing this to try to understand what you're asking us to do. If we simply said, this was never an Article III standing issue, the Chaudhry case makes that clear, and there are other cases that make that clear. Vacate and remand the line of Chaudhry, reset, rebrief on a motion to dismiss. Yes. That's what you're looking for. Right. And I think it's two things. It's one, there is no preclusive decision on the merits. Also no preclusive decision on Article III. And then, Mr. Love actually does have Article III standing, so you push that to the side. All that's left is the merits. And that's what we want, to be heard on the merits in federal court. Let me ask a question, if I can. Do you concede, as you stated in your reply brief, that Article III standing was actually litigated and decided in Terry? And if so, if you have that concession, does not our court have, give preclusive effect to unappealed judgments, even if a judgment is erroneous? No judge loves, we do concede that Article III standing was litigated and decided in the first case. But that just brings up all four grounds for reversal on why issue preclusion does not apply here. The first being that the city waived its preclusion defense by taking its case from state court back to an Article III court. It's the only reason why the parties have to relitigate Article III standing, is the city's removal. The removal back, we asked, in relitigation of the issue. And that it also, the state court confirmed our waiver by logic, waiver by removal logic, and that is against order of retention. So when a party takes a case from state court to federal court and has a waivable defense proceeding in federal court, here will be issue preclusion, there will be state sovereignty, that removal waives it. So I agree, Your Honor, there is, there was a decision on Article III standing in the first case. It just, can we give it preclusive effect? So no because of waiver, no because of this court's decision in gospel missions was held that issue preclusion does not apply to Article III standing. And then we have our third argument, which is that even if issue preclusion does apply to Article III standing, Mr. Luft shared the defect, the reported defect in the first case, which is that he had an allege that he lived with Mr. Thomas at the time of the killing. I do want to briefly touch on how to characterize the dismissal order because I do think the court could stop after this issue if it wants. Our position is that Judge Otero decided Article III standing. He also drew a clear line between standing and merits. In the ER 192, he said that he had to address standing before getting to substantive matters. He described Article III standing as the personal stake necessary to warrant the invocation of federal court jurisdiction. And then he also identified the three elements of Article III standing from Lujan against Defenders of Wildlife. Went through a standing analysis, where he got it wrong, but he did go through that standing analysis and then said, at ER 195, he's not going to address whether Mr. Luft has stated a claim under Rule 26. Because the city's argument now is that Judge Otero actually decided the merits, that's exactly what Judge Otero said he wasn't deciding. I think it's open for this court to say that the city has abandoned his arguments for giving preclusive effect to the Article III determination that Judge Otero made. So that's sort of our fourth round for not applying an issue preclusion to Article III. How do you address our concern, though, that in essence it's like a collateral attack on Judge Otero through the Judge Anderson decision? It isn't a collateral attack on Judge Otero. Because of the procedural history, we're not trying to argue that Judge Otero didn't have the case for lack of Article III jurisdiction. We're fine with letting that case stand as it is. The question is, what happens next? So we refiled in state court, which was our option after an Article III dismissal. The city took this case back to federal court by removing it. And that brings up a separate question, which is not, are we collaterally attacking Judge Otero's decision? But the second court who now gets this case has to decide its own jurisdiction. Is it going to use preclusion to skip that step and say, well, because Judge Otero dismisses for lack of Article III standing, I have to dismiss this case, too? Or does the second court get to decide its jurisdiction unencumbered by issue preclusion? And that's the gospel missions argument that we point out, where this court held that issue preclusion doesn't apply to Article III standing, which does seem odd. We don't want jurisdictional litigation to go on forever. And I have reasons why I don't think that there will be abuse. But the principle here, and it applies only to subject matter jurisdiction, is that a court always has to determine its own jurisdiction. It's not always sufficient. We know that issue preclusion is about efficiency. But subject matter jurisdiction stands apart from those efficiency concerns as being something that can be raised at any time in litigation, something the court has to decide, even if you've gone through trial, if the jurisdictional issue hasn't been raised. I don't think that there will be abuse under gospel missions. We haven't seen it so far. Even this case came up in a very strange posture, which is the removal from state court back to federal court. But it's a very narrow slice of dismissals, just dismissals for lack of subject matter jurisdiction. And it's not a winning strategy to have a case dismissed and then to refile it back in the same court, which is not what we did here. Because it's probably going to end up in front of the same judge. The decision is right. It's going to be easy enough for the second judge, even if a new judge to apply it. And there's going to be the potential of sanctions if the person is a vexatious litigant. So I think this is what we haven't seen abuse under gospel missions. I guess if the court has no further questions, either about how to characterize the decision, or about or for arguments for reversal. If the court does reach, with a question whether it should percolate to the price of Article 3 standing, I'll reserve the remainder of my time for a vote. Very well. Thank you. Good morning, your honors. May it please the court, Scott Carpenter on behalf of defendants appellees. Your honors, this court should affirm the trial court's dismissal of appellant's complaint based on res judicata. In this action, appellant has brought the very same claims against the very same parties that Judge Otero dismissed with prejudice, which were a final adjudication on the merits. The appellant has conceded in his briefing that the question of whether the Constitution protects Mr. Love's relationship with Mr. Thomas. They've conceded that that is a merits-based question, about the interests cognizable under the due process clause. And that is precisely the question and issue that the parties actually litigated. And Judge Otero decided, after multiple rounds of motions to dismiss and opportunities to amend the pleadings, we acknowledge that Article 3 was mentioned in the briefing and by Judge Otero. And our position has never been that the court has lacked subject matter jurisdiction to hear appellant's 1983 claims under the 14th Amendment. In any event, the core question that Judge Otero ruled upon was whether or not Mr. Love has due process rights related to decedent's death. The rulings that Judge Otero issued focused specifically on the Supreme Court's decision in Lear v. Robertson and the Ninth Circus decision in Wheeler v. City of Santa Clara. Those are not Article 3 decisions. They're decisions about the substantive due process clause and interests cognizable under them. Judge Otero did not engage in an actual Article 3 analysis going through the steps of injury in fact, traceability, and redressability. It's mentioned, it's referenced, but the actual analysis is under Wheeler and Lear. There's no mention in the rulings about subject matter jurisdiction. The April 2019 dismissal order regarding the Second Amendment complaint doesn't mention Article 3 at all. And Judge Otero repeated the mantra from Wheeler, which is that few close relationships can be entitled to due process protection. And this was the question I think he was really wrestling with, which was not about the court's adjudicatory power or whether or not there was a case in controversy. But here he had a non-biological, non-adopted, purported heir, and whether or not the due process clause affords protection to that purported parent-child relationship. And that's not a matter that's limited to this case or to purported heirs bringing 1983 claims, cuz the converse is true as well. Counsel, will you accept a question? Please, Your Honor. Having been in district court, I sometimes came under the difficulty of appellate courts telling me what I said when I know what I said, and it wasn't what they said, so I would like to have you tell me what language in the Terry dismissal and record supports your contention that the Terry court did not dismiss for a lack of Article 3 standing. What is the language you relied? So, the main provisions of Judge Otero's rulings that show that this was a merits-based decision. As I mentioned, he repeated the mantra from Wheeler about few close relationships being afforded due process protection, and that's at ER 39 and SCR 19. Both in the April 2019 order, the June 2019 order, and the August order denying the motion for reconsideration. He repeatedly found that Love could not, quote, allege a custodial, biological, or legal relationship between himself and the decedent. And that was the core question that Judge Otero ruled upon repeatedly, and that was the issue that was actually litigated by the parties. And even though the briefs from the city's perspective may have referenced Article 3, it's not mentioned in the briefs from the opposition, from appellant's side. The core question was whether or not, under the Supreme Court and constitutional protection to this non-biological, non-adoptive relationship. And- The fact that what you're saying has been helpful, but notwithstanding the carry dismissal, do you now concede that Love has Article 3 standing? Our position has been that the federal courts have subject matter jurisdiction over his 1983 14th Amendment claims. That being the answer to the question, I'm focusing on that Article 3 standing. Do you now concede that Love has Article 3 standing? Well, there's an issue as to, I think, part of the confusion is that an injury in fact analysis, I think, starts from the premise of whether or not a federally protected interest was implicated. And if you don't have any rights under the Constitution at all, I don't think you can establish Article 3 standing. But the point isn't that the court doesn't have jurisdiction to hear the matter. The point is that the plaintiff is not a proper plaintiff. They have no rights under the Constitution. And then- I think what you're saying is you do not concede that Love has Article 3 standing. Correct, Your Honor. Okay. I think the one other point to make is that this is precisely the type of situation that res judicata and district proclation were, was intended to address. Because on remand, all that would happen is simply the city would copy and paste its motions to this briefing, take out any reference to Article 3, and then just have the judge, presumably Judge Anderson, just redo exactly what Judge Otero did. And res judicata was meant to avoid repetitive litigation, to uphold the finality of judgments and not undermine other court's decisions. To avoid the possibility of inconsistent results and to conserve judicial resources, avoid judicial waste. And that's all we're going to be doing on remand is wasting the party's and the court's time. And this is precisely why res judicata applies to this type of situation, where it's a merit based decision. The core fundamental question that Judge Otero addressed was Mr. Love's relationship to the appellant. So, counsel, I appreciate your argument that effectively what Judge Anderson was doing, or Judge Otero was doing, I would say he really wasn't getting into the merits. He just kind of got the wrong words in there, is effectively what you're saying. Correct. I think it's more that it may have been the wrong label. And I think counsel referenced headline decision, and that's all it was. It was as a headline, and the substance of the decision was merit. And I appreciate why you said that. I mean, I think that's a fair reading of it. But we also have to read what the judge wrote. And at ER 195, Judge Otero wrote, the court declines to address whether plaintiffs fail to state a claim under Rule 12b-6, and then says basically we can't reach whether they stated a claim because we have to decide standing first, and when I decided standing against. So when we have that language, and I understand where you're going, but when we have that language right there, saying I'm not reaching the merits because I'm deciding this on standing, how can we say the judge reached the merits? Well, what Judge Otero was referencing was the elements of stating a substantive due process claim under the 14th Amendment, shock to conscience, that type of, you know, lack of law enforcement, legitimate objective. But it's still a merits-based decision, because regardless of his intention, the core issue that was addressed was Mr. Love's rights under the Due Process Clause, and that's unambiguous. That issue, the purposes of issue preclusion, was actually litigated. It was fully briefed multiple times. It was heard by the court, and the court used recent analysis under non-jurisdictional case law to deny Mr. Love's claims. Do you have any authority that says when we're applying issue preclusion principles, we can effectively look through what the judge actually said, and interpret what they said? You know, we're always talking about plain meaning these days. Can we, is there a way we can not do that here and look through? Do you have any authority that allows us to be, look, I understand, look, I understand exactly what you're saying, exactly what you're saying. But, do you have any authority that allows us to do that? Well, we would say that a plain, honest reading of the record is that it was a merits-based ruling. I think Judge Anderson was also correct to note the authority, which I believe is derived from the Ninth Circuit's decision in Lubin Industries, which is that any final adjudication which is sufficiently firm can have preclusive effect. And there's four factors that Judge Anderson went through, which is whether or not the decision was tentative, whether the issue was fully heard, whether the district court used, you know, proper reasoning in its opinion, and whether it was subject to approval. And each of those four factors established that his rulings and his dismissal with prejudice, regardless of the label, or regardless of its intention, was sufficiently firm on the merits of whether or not Mr. Love has rights under the due process clause. Was the judgment in Terry with or without prejudice? It was with prejudice, Your Honor. Would that not be an indication that a merits decision was being made? Because if it were jurisdictional, it would be without prejudice. Yes, Your Honor. And we mentioned that in the briefs. It was not only stated dismissal with prejudice in the June 2019 ruling, but also an order under 41B was entered, dismissal with prejudice. So counsel's position in opening argument that what occurred here was really a jurisdictional decision and Mr. Love could choose to appeal or just refile seems incongruous with what you just said. Correct. Because our position is that the court never made a decision about lacking the authority to hear Mr. Love's 14th Amendment claims. And there's no basis that, you know, he would have, or no compelling argument that he would have somehow standing to bring the 1983 claims in state court. Section 1983 through Section 1988 is, you know, a remedial statute that is meant to address the deprivation of federal constitutional rights. And if he lacks those rights, he can't proceed in any venue. If the court has no other questions, then I'll stop. Judge Walz, anything else? I'm fine. Thank you very much. Thank you, Your Honor. Thank you, Judge. Thank you, Your Honors. I heard two concessions from the city that I think resolved this case in our favor. The first is that the city continues to contest that Mr. Love has Article III standing. And not only does the city contest that Mr. Love has Article III standing, but it also points out exactly why Judge Otero thought this was an Article III standing issue, is the relationship with Mr. Thomas goes both to the personal sake necessary to warrant the invocation of a federal court jurisdiction under the Supreme Court's decision in Worth v. Sullivan, which is what Judge Otero said here, and then it also goes to the liberty interests. That's protected by the Constitution under the Due Process Clause. That's the 12B6 issue that Judge Otero expressly said he was not going to get into. I also didn't hear the city square up to the ambiguity rule in this context. Because the city, I don't have to show that Article III is the only or even the best reading of the order. I just have to show that it's a fair reading. And that's because there are two limits on issue preclusion that would apply here. The city admits that there was at least confusion in that page 15 of its brief based on its combination of an Article III label with some Article III arguments and then some merits-based argument. And Judge Wallace, you articulated for the court in Wolfson v. Brammer that issue preclusion does not apply first if there is any doubt about the issue the parties actually litigated in the first case, and then also does not apply if the decision rationally could have been grounded in the other issue that the party is not trying to foreclose. So here, if the decision rationally could have been grounded in Article III rather than the merits, which is exactly what Judge Otero said he was deciding, then it's a jurisdictional decision, or at least it's an ambiguous decision where there wouldn't be an issue preclusion. Judge Fitzwater, you asked about the with prejudice label for the dismissal, and this court considered and rejected that very argument in a release against the homage. That label is not a thumb on the scale in favor of preclusion. First, because a district court can't decide the preclusive effect of its own judgment, that's an issue that has to be decided by the second court, and also because that label does not equate with a decision on the merits when it's here the dismissal was jurisdictional. So we're using it to address that very issue. There was a double-barreled dismissal, one jurisdictional ground, one merits ground, which is another way of looking at what, you know, what potentially happened there. And this court said, no claim preclusion, and we don't want to force parties that have to take an appeal just because of the with prejudice label. This is going to end up being every ambiguous decision will have to go up to the ninth circuit and decide, rather than letting the party refile in a court that has jurisdiction here, which would have been the state court. So I think the ambiguity rule really resolves this in our favor if you get there. He said Article 3, but at worst, there's things pointing in both directions. There's at least a doubt. You could at least rationally read a decision to be grounded in Article 3 standing that he's not going to side until v. 6. Judge Owens, you asked about, can you look through the issue to the reasoning and sort of recharacterize the issue after the fact? That's inconsistent with preclusion, which is really, this is sort of cribbing it from the story of Cises, but it's a doctrine of preservation, not transformation. And the reason why is that when it applies, if a court has decided an issue, it's no defense to say that the reasoning was wrong. What we have going on here is a decision that decides Article 3 standing, but for wrong reasons, reasons that both misunderstand the governing Article 3 test, but then also the merits test. And if issue preclusion does apply, we wouldn't be able to point to the reasoning to say don't apply preclusion here. You know, if you did, there would be no effect for preclusion, because preclusion would then turn on the merits, which would just mean that the second court has to re-decide the issue. And it's the same thing here when the city is trying to use the reasoning to change the issue. It wasn't an issue that was explicitly litigated by the parties, only implicitly litigated, and you can't have issue preclusion in that situation. So if there are no further questions on how to characterize the decision, or on other original grounds for reversal for not applying issue preclusion to Article 3, then I'd ask the court to reverse either because the decision is ambiguous, or even if it is on Article 3 standing, it seems as if the city has abandoned that theory. I didn't hear anything today on the permissibility of applying issue preclusion to Article 3, or because of our original grounds for reversal, which were waiver, gospel missions, and terrible defect. Thank you. Could you just, before you sit down, could you just clarify for me, I believe I'm right, but I want to make sure, do you now concede that Love has Article 3 standing? Yes, we argue that Mr. Love does have Article 3 standing, based on the emotional distress of watching Mr. Thomas suffocate to death under the knee of a Pasadena police officer. Okay, thank you. Thank you. All right, thank you very much, counsel. I want to thank all the pro bono counsel here for stepping up to the plate. We really appreciate you doing that. This matter is submitted.
judges: WALLACE, OWENS, Fitzwater